**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

SAUR International S.A.S.,

      11, chemin de Bretagne
      92130 Issy-les-Moulineaux
      France
              *Petitioner*,

v.

Republic of Argentina,

      Procurador del Tesoro de la Nación
      Posadas 1641
      C1112ADC Buenos Aires
      Argentina

          *Respondent.*

Civil Action No. 1:26-cv-01392

---

**PETITION TO ENFORCE ARBITRAL AWARD**

Petitioner SAUR International S.A.S. ("Saur") brings this action to enforce an arbitral award (the "Award") issued on May 22, 2014, in ICSID Case No. ARB/04/4 against Respondent, the Republic of Argentina ("Argentina"), following arbitration proceedings before a tribunal constituted by the International Centre for Settlement of Investment Disputes ("ICSID") and conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention are not subject to collateral attack—that is, a federal court has no jurisdiction to examine the issues disputed in the award proceedings—and must be enforced and given the same full faith and credit as if the award were a final judgment of a state court in the United States. Accordingly, Petitioner requests that this Court (1) enter an order enforcing the Award in the same manner as a final

judgment issued by a court of one of the several states, and (2) enter judgment in Petitioner's favor in the amounts specified in the Award, converted to U.S. dollars.

A certified copy of the Award, along with a certified English translation, is attached as Exhibits A and B to the Declaration of Matthew D. McGill ("McGill Declaration"), Exhibit 1 hereto. The Tribunal's February 27, 2006 Decision on Objections to Jurisdiction ("2006 Jx. Dec.") and its June 6, 2012 Decision on Jurisdiction and Liability ("2012 Dec.") are incorporated by reference into the Award, *see* Award § XI, and are included with their English translations as Exhibits C–F respectively, to the McGill Declaration. Further, pursuant to Article 53(2) of the ICSID Convention, "any decision interpreting, revising or annulling [an ICSID] award" is considered part of the award. A certified copy of the Decision on Annulment ("Annulment Dec.") and an English translation, are attached as Exhibits G and H to the McGill Declaration.

A copy of the ICSID Convention is attached hereto as Exhibit 2.

### Parties

1.      Petitioner SAUR International S.A.S. is a corporation incorporated under the laws of France. SAUR International was formerly organized as a different corporate form under French law—SAUR International *S.A.* (a Société Anonyme)—but has since transformed into an S.A.S. (a Société Par Actions Simplifiée).

2.      Respondent, the Republic of Argentina, is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602–1611.

### Jurisdiction and Venue

3.      This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA.

4. Pursuant to Section 1605(a)(1) of the FSIA, Argentina is not entitled to immunity from this Court's jurisdiction in an action to enforce an ICSID award because it has waived that immunity by agreeing to the ICSID Convention. *See Tatneft v. Ukraine*, 771 F. App'x 9, 9 (D.C. Cir. 2019) (per curiam); *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013).

5. Further, pursuant to Section 1605(a)(6) of the FSIA, Argentina is not immune from suit because this is an action to enforce an arbitral award made pursuant to the arbitration provision of an investment treaty, *see infra* ¶¶ 9–25, and enforcement is governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 204–06 (D.C. Cir. 2015).

6. This Court also has subject-matter jurisdiction pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

7. Upon service of this petition, this Court will have personal jurisdiction over Argentina pursuant to the FSIA, 28 U.S.C. § 1330(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

8. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does "not apply to enforcement of awards rendered pursuant to the [ICSID] convention." 22 U.S.C. § 1650a(a). Thus, the FAA's jurisdictional requirements do not apply to this action.

### The Underlying Dispute

9. Saur is engaged in the business of water production, treatment, distribution, and sanitation. Award ¶ 47.

3

10.     On June 9, 1998, Saur invested—through companies in which Saur owned stock, including one that was a wholly owned subsidiary of Saur and its parent company—$72.4 million in Obras Sanitarias Mendoza, Sociedad Anónima (OSM), a private sanitation company in Mendoza, Argentina, that had contracted with the Province of Mendoza to provide public drinking water and sewerage services. Award ¶¶ 48, 55.

11.     On July 22, 1998, Saur and OSM also signed an agreement under which Saur would provide managerial services to OSM and would receive compensation equivalent to 3% of OSM's billing. Award ¶ 57.

12.     Beginning in the midst of the Argentine financial crisis in early 2002 and continuing over the next approximately eight years, Argentina and the Province of Mendoza took steps to undermine Saur's investment in OSM including a physical takeover of OSM and a termination of the contract through which OSM provided drinking water and sewage systems. Award ¶¶ 60, 70–77.  Specifically, the concession contract was terminated by the Province of Mendoza via Decree 1541 of 2010, effective September 27, 2010. 2012 Dec. ¶ 200. Since OSM's sole purpose was to provide drinking water and sewage systems, at an extraordinary general meeting of Shareholders on October 10, 2010, the shareholders decided to initiate the dissolution and liquidation process, which was extended through 2025. Award ¶ 79.

13.     Saur's investment was protected by the Agreement on the Reciprocal Promotion and Protection of Investments ("the Bilateral Investment Treaty" or "BIT"), that was entered into on July 3, 1991, between France and Argentina, and took effect on August 3, 1993. The BIT is attached hereto as Exhibit 3. The BIT is designed to "develop economic cooperation between the two States and to create favourable conditions for French investments in Argentina and Argentine investments in France." BIT preamble. In advance of that goal, Argentina agreed, among other

things, to "accord in its territory and maritime zone just and equitable treatment" of French investors. BIT art. 3. Argentina also agreed that the investments of French investors would "be fully and completely protected" and that Argentina would "not take, directly or indirectly, any expropriation or nationalization measures or any other equivalent measures having a similar effect of dispossession," absent certain limited exceptions. *Id.* art. 5.

14.     The BIT protects investments in the territory of one "Contracting Party"—France or Argentina—made by "investors of the other Party." *See* BIT arts. 2–6.

15.     Saur is an investor incorporated in France, Award ¶ 1, so the BIT protects its investment in Argentina, 2006 Jx. Dec. ¶¶ 57–95.

16.     In the BIT, France and Argentina consented to submit disputes arising under the Treaty to arbitration. Article 8(2) provides that disputes "shall, at the request of the investor, be submitted . . . to international arbitration under the conditions described in paragraph 3." Article 8(3) in turn provides that "the investor may choose to bring the dispute before . . . ICSID," if both Argentina and France are parties to the ICSID Convention (which they are and were at all relevant times).[1] Article 8(5) further provides that "[a]rbitral decisions shall be final and binding on the parties to the dispute." Accordingly, Argentina consented to arbitrate the underlying dispute here pursuant to the ICSID Convention.

17.     On November 17, 2003, Saur filed a request with ICSID for arbitration under the ICSID Convention. Award ¶ 1. Saur asserted that Argentina violated the BIT in three ways: (1) by violating the obligation to treat investors fairly and equitably by frustrating Saur's legitimate expectations and failing to comply with obligations of transparency, impartiality, and procedure as well as adopting coercive and harassing measures; (2) by wrongly expropriating property from

---

[1] ICSID, *List of Member States–ICSID/3*, bit.ly/3w4CZTn.

Saur; and (3) by violating the obligation to guarantee full protection and security based on the manner in which the intervention took place. *Id.* ¶ 80.

18.    An ICSID arbitral tribunal ("the Tribunal") was constituted on September 3, 2004. Award ¶ 6.

19.    Argentina objected to the Tribunal's jurisdiction, and the Tribunal conducted an initial hearing on jurisdiction in Washington, D.C., on November 10 and 11, 2005. Award ¶ 12.

20.    On February 27, 2006, the Tribunal issued a 33-page opinion determining that the ICSID Tribunal had jurisdiction to hear the dispute because Saur is a French investor—even if some of its relevant investments were indirect—and Argentina is a signatory to the BIT. 2006 Jx. Dec. ¶ 95.

21.    The proceedings were then stayed from April 7, 2006, to May 4, 2010, at the consent of the parties. Award ¶ 16. During this time frame, the parties entered into two agreements that resolved portions of their dispute. *See id.* ¶¶ 62–66.

22.    After the stay was lifted, the Tribunal conducted a hearing on the merits in Washington, D.C., from November 14 to 18, 2011. Award ¶ 19.

23.    On June 6, 2012, the Tribunal issued a 141-page Decision on Jurisdiction and Liability, which is incorporated by reference in the Award. In the decision, the Tribunal again determined that it had jurisdiction to hear the dispute, addressing new arguments against jurisdiction raised by Argentina as well as other threshold issues. 2012 Dec. ¶¶ 233–35, 243–303, 317–22. On the merits, the Tribunal ruled for Saur in part and for Argentina in part. It concluded that Argentina had violated the BIT provisions requiring fair and equitable treatment and prohibiting expropriation but that Argentina had not violated the obligation of full protection and security. *See* 2012 Dec. § VI; Award ¶¶ 82–84 (describing 2012 Decision). It also limited

Argentina's liability to actions after the agreements settling portions of the dispute. 2012 Dec. § VI. The Tribunal reserved a final decision on the amount of damages and a decision on costs for after an additional phase of arbitration. *Id.*

24.    After conducting another hearing on damages from June 17 to 18, 2013, in Washington, D.C., Award ¶ 34, the Tribunal entered on May 22, 2014, an 85-page arbitral award in Saur's favor ("the Award"). In the Award, the Tribunal ordered Argentina to pay Saur $39,990,111 as compensation, in addition to interest calculated at an annual rate of 6% compounded annually, from September 17, 2007, until the date of payment of the Award. Award § XI. The Tribunal also ordered Argentina to pay Saur arbitration costs and fees in the amount of $686,500 and €1,486,975, together with interest calculated at an annual rate of 6% and compounded annually, from May 22, 2014 until the date of payment. *Id.*

25.    On September 19, 2014, Argentina submitted an application for annulment of the Award. Annulment Dec. ¶ 6. On December 19, 2016, an *ad hoc* committee constituted under the ICSID convention denied Argentina's application for annulment.

## Legal Basis for Relief

26.    The ICSID Convention provides that contracting parties must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention art. 54(1). The ICSID Convention further provides that a contracting state "with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id.*

27.     The United States is a contracting party to the ICSID Convention and is therefore obligated to enforce the Award as if it were a final judgment of a court in the United States.[2] That obligation is fulfilled through 22 U.S.C. § 1650a(a), which provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

28.     Awards issued pursuant to the ICSID Convention are not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a. Contracting states' courts are "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023) (quoting *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 102 (2d Cir. 2017)).

29.     The ICSID Convention therefore "reflects an expectation that the courts of a member nation will treat the award as final." *Valores*, 87 F.4th at 518 (quoting *Mobil*, 863 F.3d at 102); *see also* ICSID Convention arts. 53(1), 54(1). Consistent with this mandate, 22 U.S.C. § 1650a(a) provides that the FAA "shall not apply to enforcement of awards rendered pursuant to the convention," thereby "mak[ing] [the FAA's defenses] unavailable to ICSID award-debtors in federal court enforcement proceedings." *Mobil*, 863 F.3d at 120–21. District courts thus enforce ICSID awards without allowing substantive challenges to the awards. *See, e.g.*, *Blasket Renewable Invs. LLC v. Kingdom of Spain*, 2025 WL 3516146, at *6–8 (D.D.C. Sept. 11, 2025); *Cube*

---

[2] ICSID, *List of Member States–ICSID/3*, bit.ly/3w4CZTn.

*Infrastructure Fund SICAV v. Kingdom of Spain*, 2025 WL 2374517, at \*3 (D.D.C. Aug. 14, 2025);

*Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2025 WL 2336428, at \*4–7 (D.D.C. Aug. 13,

2025); *Infrastructure Servs. Luxembourg S.A.R.L. v. Kingdom of Spain*, 2025 WL 2320406, at \*4–

5 (D.D.C. Aug. 12, 2025), *appeal docketed*, No. 25-7174 (D.C. Cir. Oct. 31, 2025); *Blasket*

*Renewable Invs. v. Kingdom of Spain*, 2025 WL 2320368, at \*3–5 (D.D.C. Aug. 12, 2025); *Blasket*

*Renewable Invs., LLC v. Kingdom of Spain*, 2024 WL 4298808, at \*8 (D.D.C. Sept. 26, 2024);

*Perenco Ecuador Ltd. v. Republic of Ecuador*, 2023 WL 2536368, at \*5 (D.D.C. Mar. 16, 2023);

*Tethyan Copper Co. PTY Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 276 (D.D.C.

Mar. 10, 2022); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at

\*6 (D.D.C. Dec. 17, 2018); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F.

Supp. 2d 131, 132–34 (D.D.C. 2012); *Republic of Panama v. Jurado*, No. 8:12-cv-1647 (M.D.

Fla. June 13, 2013), Dkt. 18 (order entering judgment).

## <u>Cause of Action and Request for Relief</u>

30.     Arbitral awards issued pursuant to the ICSID Convention are subject to mandatory

enforcement in the courts of the United States, which must give those awards the same full faith

and credit as a final judgment issued by a state court. 22 U.S.C. § 1650a(a).

31.     The Award was rendered in accordance with the ICSID Convention against

Argentina and in Saur's favor. Saur is therefore entitled to enforce the Award's pecuniary

obligations against Argentina.

32.     Accordingly, Saur is entitled to an order (a) enforcing the Award in the same

manner as a final judgment issued by a court of one of the several states, and (b) entering judgment

in Saur's favor in the amount specified in the Award.

33.    Saur requests that the Court enter judgment in U.S. dollars and convert any other currency specified in the Award to U.S. dollars. *See* Award § XI.

WHEREFORE, Saur requests that the Court enter an order:

(a)    enforcing the Award against Argentina in the same manner as a final judgment issued by a court of one of the several states; and

(b)    entering judgment against Argentina and in Saur's favor in the following amounts, converted to U.S. dollars:

(i)    $39,990,111 in principal;

(ii)    Interest on that principal calculated at an annual rate of 6% compounded annually, from September 17, 2007, until date of entry of judgment;

(iii)    $686,500 and €1,486,975 in arbitration costs and fees, together with interest calculated at an annual rate of 6% and compounded annually, from May 22, 2014, until date of entry of judgment;

(iv)    Post-judgment interest on each of the above sums at the rate specified in 28 U.S.C. § 1961.

Dated: Washington, D.C.
　　　April 23, 2026

Respectfully submitted,

*/s/ Matthew D. McGill*
Matthew D. McGill (D.C. Bar #481430)
matthew.mcgill@kslaw.com
Nicholas A. Mecsas-Faxon (D.C. Bar #1779269)
nmecsas-faxon@kslaw.com
Courtney Stone Mirski (D.C. Bar #9001045)
cstonemirski@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for SAUR International S.A.S.*

11